## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

DUANE PORTER,

              Plaintiff,

v.                                  CIVIL ACTION NO.   3:19-0572

BRASKEM AMERICA, INC.,
JEFFREY BLATT, and
MI-DE-CON, INC.,

              Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion to Dismiss Counts II, III, and V of Plaintiff's Complaint by Defendants Braskem America, Inc. and Jeffrey Blatt (collectively referred to as the Braskem Defendants) (ECF No. 12) and Plaintiff Duane Porter's Motion to Strike Impertinent Language from the Braskem Defendants' Memorandum of Law in Support of the Motion to Dismiss. ECF No. 17. For the following reasons, the Court **GRANTS, in part,** and **DENIES, in part,** the Braskem Defendants' motion and **DENIES AS MOOT** Plaintiff's motion.

### I.
### FACTUAL ALLEGATIONS

As relevant here, Plaintiff alleges he was employed in May 2016 by Defendant Braskem as a Senior Engineer and Capital Projects Manager at its plant in Kenova, West Virginia. In February 2018, Plaintiff began questioning the safety of certain devices. In sum, Plaintiff states that Defendant Jeffrey Blatt, the Plant Manager, disagreed and openly criticized him about his concerns. In addition, some of the Operating Engineers at the facility lodged complaints against him, blaming him for delays in design and implementation. Although Plaintiff maintains he was

cleared of wrongdoing by his direct supervisor, he alleges Defendant Blatt and certain Operating Engineers began conspiring against him to get him fired.[1]

Plaintiff asserts Defendant Blatt then convinced one of Plaintiff's co-workers to get Defendant Mi-De-Con, Inc. (MDC), a third-party vendor to Defendant Braskem, to make a false complaint against him, accusing him of accepting kickbacks in exchange for awarding contracts to one of MDC's competitors. A compliance manager for Defendant Braskem and another individual were assigned to investigate the claim. The investigator contacted Plaintiff on July 2, 2018, and instructed Plaintiff he could not discuss the matter with anyone. According to Plaintiff, the investigator told him, *inter alia*, he would be given a written copy of the investigation report and Defendant MDC would not be permitted back at the plant if the charges proved false.

As part of the investigation, the individual who allegedly paid the kickbacks to Plaintiff was interviewed with his attorney present on July 20. During the interview, the alleged payor told the investigator he was personal friends with Plaintiff, but both he and his attorney contend there was no mention of the investigation being confidential.

Later that same day, Plaintiff met with the investigator. At that meeting, Plaintiff states he was told, *inter alia*, that he was cleared of any wrongdoing, but he should not retaliate against his co-worker that reported the alleged scheme. Plaintiff also alleged that the investigator "insinuated" that Defendant MDC would not be permitted back at the plant. *Compl.* at ¶72.

---

[1]Plaintiff claims Defendant Blatt either knew or should have known that under the relevant regulations of the Occupational Safety Health Administration (OSHA) he could not be terminated for raising concerns about safety.

Plaintiff states that, as he was leaving the interview with the investigator, Defendant Blatt and another individual entered the room and the investigator briefed them as to the results of the investigation. Plaintiff further states that, after he was exonerated, the alleged payor called him on July 25 and said that he suspected Defendant MDC made the complaints against him.

Plaintiff also alleges that, despite being cleared of wrongdoing, Defendant Blatt orchestrated having Defendant MDC at the plant on July 26, knowing it would agitate and trigger a reaction from him. Plaintiff admits that he confronted Defendant Baskem's Maintenance Lead about why Defendant MDC was at the plant. Plaintiff also admits asking him, with another individual present, if he was aware Defendant MDC accused him of taking kickbacks and he was cleared of those accusations. Upon being informed by the Maintenance Lead that Defendant Blatt told him to call Defendant MDC to come to the plant, Plaintiff went to Defendant Blatt's office to discuss the matter. Plaintiff alleges Defendant Blatt falsely denied knowing Plaintiff was exonerated, and he instructed Plaintiff to go home and "cool off." Plaintiff left the plant, but he returned later that day for a scheduled meeting.

When he returned, Plaintiff states he was not allowed past the guard gate. Defendant Blatt then came to the gate and told him he was suspended with pay, pending an investigation of his behavior and for violating the Company's confidentiality policy. Following the investigation, Plaintiff was terminated on August 8 for violating the policy. Plaintiff states he was never provided copies of either the initial or subsequent investigation reports.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Supreme Court continued by explaining

that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

### III.
### DISCUSSION

#### A.
#### Count II
#### Tortious Interference

In Count II, Plaintiff alleges that he "had a contractual or business relationship or expectancy of maintaining his executive level, high-paying, at-will employment relationship with BRASKEM," and Defendant MDC, as part of its civil conspiracy with the Braskem Defendants and others, tortuously interfered with his employment relationship. *Compl.* at ¶¶134-37. (capitalization original). Plaintiff further asserts the Braskem Defendants "were complicit in the . . . tortious interference by MDC, even though typically only a third-party outside the employment relationship can be held liable for tortious interference." *Id.* at ¶135. The Braskem Defendants,

however, move to dismiss this claim, arguing Plaintiff cannot maintain a tortious interference claim against them as a matter of law. The Court agrees.

> In West Virginia, it is well established that:
>
>> It is impossible for one party to a contract to maintain against the other party to the contract a claim for tortious interference with the parties' own contract; each party has agreed to be bound by the terms of the contract itself, and may not thereafter use a tort action to punish the other party for actions that are within its rights under the contract.

Syl. Pt. 1, *Shrewsbery v. Nat'l Grange Mut. Ins. Co.*, 395 S.E.2d 745 (W. Va. 1990); *see also Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 403 (W. Va. 2008) (per curiam)[2] ("Our law is clear that, in order for a party to be held liable for intentional interference with a contractual relationship, the party must be someone outside of the contractual relationship."). Here, both the Braskem Defendants and Plaintiff agree that Plaintiff was an at-will employee. However, to the extent Plaintiff may even claim he had some type of contractual relationship with them, the Braskem Defendants argue they would be a party to the alleged contract and, therefore, cannot be held liable for tortious interference.

In response, Plaintiff argues the Braskem Defendants engaged in a civil conspiracy with Defendant MDC and others to commit a tort, as he alleged in Count I of his Complaint,[3] and their wrongful acts interfered with his at-will employment status, as alleged in Count II. However,

---

[2]The West Virginia Supreme Court has recognized that "[a] per curiam opinion may be cited as support for a legal argument." Syl. Pt. 4, *Walker v. Doe*, 558 S.E.2d 290 (W. Va. 2001) (overruled on other grounds by *State v. McKinley*, 764 S.E.2d 303, 313 (W. Va. 2014)).

[3]Count I is for civil conspiracy, and the Braskem Defendants have not moved to dismiss that claim.

Plaintiff's argument ignores the fundamental flaws of his claim. First, he admittedly was an at-will employee. Second, in any event, West Virginia law prohibits Plaintiff from bringing a tortious interference claim against the Braskem Defendants under a contact theory.

Despite the unequivocal rulings by the West Virginia Supreme Court, Plaintiff nevertheless argues his tortious interference claim may proceed against the Braskem Defendants. In particular, Plaintiff makes a puzzling argument that he can maintain his claim against Defendant Blatt because Defendant Blatt "spoke for the corporation" and took his actions within the scope of his employment. *Mem. of Law in Opposition to Defs.' Motion to Dismiss*, at 9. Plaintiff cites no cases to support his argument that he can pursue his claim against an agent who is acting within the scope of the agent's employment. To the contrary, the West Virginia Supreme Court in *Hatfield* found it "impossible" for a tortious interference claim to exist against employees, who were acting within the scope of their employment, when they terminated the plaintiff's employment. *Hatfield*, 672 S.E.2d at 403 (stating, because the employees "were acting as agents of the [employer], it was impossible for them to have tortiously interfered with the [employer's] contract"). As Plaintiff in this case affirmatively asserts that Defendant Blatt was acting within the scope of his employment, his claim against Defendant Blatt cannot survive. Likewise, West Virginia law makes it clear Plaintiff's tortious interference claim against Defendant Braskem cannot proceed. Therefore, the Court **GRANTS** the Braskem Defendants' motion to dismiss Count II of the Complaint against them.[4]

---

[4]Count II is not dismissed in its entirety as Plaintiff still has a claim that MDC tortiously interfered with his "at-will employment relationship with BRASKEM." *Compl.* at ¶140 (capitalization original). MDC did not file a motion to dismiss. Additionally, the Court notes that, although the Braskem Defendants and Plaintiff argue about whether Plaintiff may pursue the tortious interference claim against the Braskem Defendants, Plaintiff alleges that Count II "is both

**B.**
**Count III**
**Fraud and Fraudulent Inducement**

Assuming the truth of Plaintiff's allegations, the essence of Count III is that Defendants and others conspired against him by devising and executing a fraudulent scheme, alleging that Plaintiff received bribes and kickbacks from a competitor of Defendant MDC. Plaintiff also contends that a sham investigation was conducted into those allegations. When that investigation proved meritless, Plaintiff states he was terminated under the pretext that he disclosed confidential information about the investigation. However, Plaintiff contends that the real reason for his termination was because Defendant Blatt wanted him fired after they got in disputes about safety, production, and spending at the plant. Plaintiff asserts that Defendants knew the allegations made by Defendant MDC were unfounded, but they used those fraudulent allegations to lay the foundation for his termination.

Although in his discussion of the standard of review Plaintiff only mentions he must make a "short and plain statement" entitling him to relief under Rule 8(a) of the Federal Rules of Civil Procedure, Rule 9(b) establishes a heightened pleading standard for claims of fraud and

---

independent and distinct *as a claim solely against MDC* and is also an intentional tort claim that is a part of a civil conspiracy with employees of BRASKEM, BLATT, GEYER, HENRY, and others, as aforesaid." *Id*. at ¶134 (italics added; capitalization original). In spite of the language that the claim is "solely against MDC," in the very next paragraph of the Complaint, Plaintiff states: "However, BRASKEM and BLATT were complicit in the fraudulent inducement of tortious interference by MDC, even though typically only a third-party outside of the employment relationship can be held liable for tortious interference." *Id*. at ¶135. Thus, to the extent Plaintiff has even made a claim against the Braskem Defendants in Count II, the above analysis applies and the claim against them is dismissed.

provides that the circumstances of fraud must be stated with particularity.[5] As explained by the

Fourth Circuit explained in *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th

Cir.1999), Rule 9(b) requires a plaintiff to plead "the time, place, and contents of the false

representations, as well as the identity of the person making the representation and what he

obtained thereby." *Harrison*, 176 F.3d at 784 (internal quotation marks and citations omitted). The

Fourth Circuit further stated the purpose of Rule 9(b) is:

> "First, the rule ensures that the defendant has sufficient
> information to formulate a defense by putting it on notice of
> the conduct complained of . . . Second, Rule 9(b) exists to
> protect defendants from frivolous suits. A third reason for
> the rule it to eliminate fraud actions in which all the facts are
> learned after discovery. Finally, Rule 9(b) protects
> defendants from harm to their goodwill and reputation."

*Id.* (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue*

*Shield of Georgia, Inc.*, 755 F. Supp. 1055, 1056–57 (S.D. Ga. 1990)). However, the Fourth Circuit

cautioned courts to be hesitant to dismiss claims "under Rule 9(b) if the court is satisfied (1) that

the defendant has been made aware of the particular circumstances for which she will have to

prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those

facts." *Id.*

In order to set forth a claim of fraud, fraudulent inducement, or intentional

misrepresentation under West Virginia law, a plaintiff must demonstrate: "(1) the act claimed to

be fraudulent was the act of the defendant or induced by him; (2) it was material and false; (3)

plaintiff relied upon it and was justified under the circumstances in relying upon it; and (4) plaintiff

---

[5]In relevant part, Rule 9(b) provides: "In alleging fraud or mistake, a party must state with
particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b), in part.

was damaged because he relied upon it." *Fifth Third Bank v. Revelation Energy, LLC*, No. CV 3:18-0270, 2018 WL 6681196, at *2 (S.D. W. Va. Dec. 19, 2018) (citation omitted); *Hagy v. Equitable Prod. Co.*, No. 2:10-CV-01372, 2012 WL 1806167, at *3 (S.D. W. Va. May 17, 2012), aff'd, 541 F. App'x 316 (4th Cir. 2013) (setting forth similar criteria for fraudulent inducement);[6] *Fifth Third Bank v. McClure Properties, Inc.*, 724 F. Supp. 2d 598, 610 (S.D. W. Va. 2010) ("Fraud includes intentional misrepresentation and the elements required to prove each tort overlap." (citation omitted)). In addition, this Court has recognized that under West Virginia law "[f]raud cannot be predicated on a promise not performed. To make it available there must be a false assertion in regard to some *existing* matter by which a party is induced to part[] with his money or property." *McClure Properties, Inc.*, 724 F. Supp. 2d at 610 (quoting Syl. Pt. 3, *Croston v. Emax Oil Co.*, 464 S.E.2d 728 (W. Va. 1995) (emphasis in *Croston*)).

Here, the Braskem Defendants argue Plaintiff's claims of fraud and fraudulent inducement must be dismissed because he has not pled sufficient facts to establish the essential elements of fraud. Specifically, Plaintiff has not alleged he himself relied upon any of the purported misrepresentations made by the Braskem Defendants. In fact, the Braskem Defendants assert that, if Defendant MDC's allegation that Plaintiff received kickbacks was false, it was Defendant Braskem that relied upon the representation by awarding Defendant MDC contracts, while it

---

[6]Fraudulent inducement also can encompass a claim that an individual was fraudulently induced into entering into a contract. *See* Syl. Pt. 6, *Folio v. City of Clarksburg*, 655 S.E.2d 143 (W. Va. 2007) (stating, in part, "[w]here one person induces another to enter into a contract by false representations which he is in a situation to know, and which it is his duty to know, are untrue, he, in contemplation of law, does know the statements to be untrue, and consequently they are held to be fraudulent, and the person injured has a remedy for the loss sustained by an action for damages. It is not indispensable to a recovery that the defendant actually knew them to be false." (internal quotation marks and citation omitted). However, Plaintiff has not articulated a claim that he entered into a contractual relationship based upon fraudulent misrepresentations of Defendants.

discontinued awarding contracts to MDC's competitor. Additionally, the Braskem Defendants argue Plaintiff has made mere conclusory allegations of fraud without identifying the who, what, or when as required under Rule 9(b).

In response to the Braskem Defendants' argument he has not alleged reliance, Plaintiff makes a single cursory statement that he premises reliance "on the presumption of innocence and honesty in a given transaction" with a very general reference to the kickback allegations made against him and the investigation conducted. *Mem. of Law in Opp'n to Defs.' Mot. to Dismiss*, at 11. Although Plaintiff's explanation might explain why he believed he was justified in relying upon a particular statement or action of the Braskem Defendants, both Rule 9(b) and West Virginia require more with respect to a claim of fraud. As stated earlier, Rule 9(b) requires a plaintiff to allege claim of fraud with particularity, and West Virginia law requires a plaintiff to identify, *inter alia*, what fraudulent statements or actions a defendant committed or induced, how those statements or actions were material and false, how he relied upon those statements or actions, and how he was damaged by relying upon those statements or actions.[7] *See Fifth Third Bank v. Revelation Energy, LLC*, 2018 WL 6681196, at *2. Perhaps realizing the weakness of his allegations with respect to a general fraud claim, Plaintiff further argues that,

---

[7]In fact, Plaintiff's reliance arguments are particularly perplexing because Plaintiff has never relied upon or believed the kickback accusations made against him were "honest," and he states the investigation into those accusations found him innocent of any wrongdoing. With respect to the second investigation, Plaintiff likewise has denied from the start that he breached the Company's confidentiality policy and the accusations against him were merely a sham to get him fired. Given Plaintiff's position that he always has known the accusations against him are false, his argument about reliance falls flat even beyond the fact Plaintiff's reliance is based upon general concepts of fairness, rather than allegations he suffered damage by detrimentally relying upon specific material and false acts of Defendants.

under the principles of fraudulent concealment and fraudulent nondisclosure, he is not required to show reliance upon a deception that was unknown to him.

In considering Plaintiff's allegations under the doctrines of fraudulent concealment and fraudulent nondisclosure, the Court first must distinguish between the two. Although Plaintiff understandably conflates these two related concepts and they sometimes do overlap, there are important differences between these legal principles. *See Belville v. Ford Motor Co.*, 60 F.Supp.3d 690, 696 (S.D. W. Va. 2014) (recognizing there are important differences between fraudulent concealment and fraudulent omission). In cases of fraudulent concealment, a plaintiff must show an affirmative act of concealment, which is not required in a fraudulent omission case. *Id.* In *United States v. Colton*, 231 F.3d 890 (4th Cir. 2000), the Fourth Circuit explained:

> the common law clearly distinguishes between concealment and nondisclosure. The former is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter. The latter is characterized by mere silence. Although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does.

231 F.3d at 899 (citation omitted). In other words, at common law, fraudulent concealment can arise when there was an affirmative deceptive act to hide information, while nondisclosure, i.e. silence, as to a material fact will not usually give rise to fraud when there is no independent duty to disclose. Fraudulent concealment is the equivalent of making a false representation because both leave "a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff." *Id.* (internal quotation marks and citations omitted). "[A]t common law, no fiduciary

relationship, no statute, no other independent legal duty to disclose is necessary to make *active concealment* actionable fraud—simple 'good faith' imposes an obligation not to purposefully conceal material facts with intent to deceive." *Id.* at 900 (italics added; citation and footnote omitted). On the other hand, mere silence, *with no independent duty to disclose*, does not give rise to a claim of fraudulent nondisclosure even "where, by words or conduct, a false representation is intimated or any deceit practiced." *Id.* at 899 (citation omitted).

Given this explanation of the distinctions between the two concepts at common law, the Court now must turn to the specific law of West Virginia upon which Plaintiff asserts his claims are based. This Court has recognized that in West Virginia "'[f]raudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, *and a duty to disclose*, coupled with an intention to mislead or defraud.'" *Resh v. Realty Concepts, Ltd.*, No. 3:12-CV-00668, 2016 WL 593809, at *7 (S.D. W. Va. Feb. 12, 2016) (quoting *Trafalgar House Constr., Inc. v. ZMM, Inc*., 567 S.E.2d 294, 300 (W. Va. 2002) (italics added)). The West Virginia Supreme Court further has recognized the concept of fraudulent concealment as set forth in the Second Restatement of Torts, which provides: "'[Any person] . . . who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering." *Kessel v. Leavitt*, 511 S.E.2d 720, 753 (W. Va. 1998) (quoting Restatement (Second) of Torts § 550 (1976)).

Although the Court has been unable to locate any cases decided by the West Virginia Supreme Court drawing clean lines between fraudulent concealment and fraudulent

nondisclosure and the relevant burdens each theory carries, in *Belville* this Court looked to the same Restatement as the West Virginia Supreme Court relied upon in *Kessel*. Pursuant to the Restatement, fraudulent concealment arises when:

> "[o]ne party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering."

*Belville*, 60 F. Supp. 3d at 696 (quoting Restatement (Second) of Torts, § 550). On the other hand, the next section of the Restatement explains non-disclosure occurs when:

> "(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
>
> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> > (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
> >
> > (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
> >
> > (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
> >
> > (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

> (e) facts basic to the transaction, if he knows that the
> other is about to enter into it under a mistake as to
> them, and that the other, because of the relationship
> between them, the customs of the trade or other
> objective circumstances, would reasonably expect a
> disclosure of those facts."

*Id.* (quoting Restatement (Second) of Torts, § 551). While fraudulent concealment is controlled by

Rule 9(b), the Court recognized in *Belville* that a more relaxed standard under Rule 9(b) applies to

fraudulent nondisclosure cases "because a plaintiff cannot be required to specifically identify the

precise time, place, and content of an event that did not occur." *Id.* at 697. Therefore, in this case,

the Court must determine whether Plaintiff's allegations are claims of fraudulent concealment or

fraudulent nondisclosure and apply the appropriate standard of review.[8]

In his Response, Plaintiff cites three events to support his claims. Specifically,

Plaintiff asserts: (1) he "was not informed of the substance or details of communications between

[his co-worker] and MDC, or the purpose behind [his co-worker's] inducement to MDC, or for

MDC's allegations about Plaintiff to [his co-worker];" (2) he "was misinformed about the

investigation by [Defendant Braskem and the investigator], regarding the acts and information [he]

was promised by [the investigator] during and at the conclusion of the investigation," and (3)

Defendant Blatt lied to him when he said he did not know the results of the investigation. *Mem. of*

---

[8]Although Plaintiff's claims arise under state law, this Court applies the Federal Rules of Civil Procedure. *See, e.g., Devers v. City of Huntington,* No. CV 3:18-1452, 2019 WL 4281936, at *1 n.2 (S.D. W. Va. Sept. 10, 2019) (stating "[w]hile Defendants ask the Court to strike portions of Plaintiff's complaint pursuant to the West Virginia Rules of Civil Procedure, the Federal Rules of Civil Procedure govern this Court's decisions" (citing *Hanna v. Plumer,* 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), for the "broad command" that "federal courts are to apply state substantive law and federal procedural law")).

*Law in Opposition to Defs.' Motion to Dismiss*, at 14. The Braskem Defendants argue, however, none of these events, even if true, is sufficient to state claims of fraudulent concealment and fraudulent nondisclosure. In considering the parties' arguments, the Court must consider these events in light of the distinction between these two concepts.

As to Plaintiff's first event, that is, Defendants did not reveal what transpired between Plaintiff's co-worker and Defendant MDC, or why those interactions took place, the Court finds this event is most aptly described in Plaintiff's favor as a claim for fraudulent nondisclosure, as it was an omission of information. With respect to this event, the Court finds Plaintiff has alleged when the conversation between the co-worker and MDC occurred (on or about June 27, 2018),[9] where it may have occurred (the plant),[10] the contents of the false representations (allegations of a kickback scheme),[11] the identity of the individuals involved (Plaintiff's co-worker, MDC, and possibly Defendant Blatt),[12] and what he believes was obtained (laying the foundation for his ultimate termination).[13] However, even if the Court applies the relaxed Rule 9(b) standard for nondisclosure about what Plaintiff was not told, what is critically missing from Plaintiff's Complaint is what legal duty the Braskem Defendants had to Plaintiff to disclose the details or motivation underlying those conversations. In cases of fraudulent nondisclosure, there must be a duty to disclose. Mere silence, without a duty, is insufficient. Although Plaintiff may have wanted

---

[9] *See Compl.* at ¶¶38, 39.

[10] *See id.* at ¶39.

[11] *See id.* at ¶¶38, 39.

[12] *See id.* at ¶38.

[13] *See id.* at ¶146.

to know greater details about what was said, who said what, and if there was an ulterior motive behind what transpired between his co-worker and MDC, and the answers to those questions might be discoverable and relevant to his conspiracy theory in Count I, Plaintiff has failed to properly allege how the Braskem Defendants' mere silence on those matters supports a claim of fraudulent nondisclosure. Therefore, the Court finds Plaintiff's fraud claim may not proceed on the basis of the first event identified by Plaintiff.

Next, Plaintiff argues he may maintain his claim of fraud because he was misinformed and mislead about the investigation into the kickback allegations. In his Response, Plaintiff specifically cites to paragraphs 50 and 72 of the Complaint. These paragraphs provide:

> 50. [The investigator] further stated that a written report of his investigation would be provided to Plaintiff at its conclusion; he also stated that if the allegations proved to be false, that he would issue an authenticating letter to placate Plaintiff from concerns he would naturally have about his reputation, and [the investigator] implied that, if false charges were made against Plaintiff, MDC would not be allowed back in the plant to work.

> *       *       *

> 72. However, [the investigator] furthered the conspiracy by refusing or failing to provide Plaintiff with the promised written report of the investigation; and he also refused or failed, or elected, not to, provide Plaintiff with an authenticating letter as promised to placate Plaintiff's obvious concerns about his reputation. [The investigator] then had knowledge that he had investigated MDC's charges and [Plaintiff's co-worker's] role in the scheme, and that a number of employees and contractors were contacted during the investigation, specifically including BLATT, [Plaintiff's co-worker], and Plaintiff's accusers from MDC, and [the investigator] was aware, or should have been aware, that these accusers may have had reason or motive to leak that an investigation of kickbacks and Plaintiff had occurred, in order to injure Plaintiff's reputation or to attempt to get him fired, thus furthering the conspiracy. [The investigator] also repeated his story about the contactor being removed from IBM properties for making false allegations and insinuated that this will

be done with MDC. [The investigator] also said he would be
finishing up the report over the weekend and submit it on Monday.

*Compl.* at ¶¶50, 72.


The essence of these paragraphs with respect to fraud is that the investigator

promised Plaintiff he would get a copy of the report and, if he was vindicated, he would get a letter

affirming this fact. In addition, Plaintiff alleges the investigator "implied" and "insinuated" that

MDC would not be permitted back at the facility. To the extent Plaintiff is complaining that the

investigator broke his promises to him, West Virginia law clearly provides that "[f]raud cannot be

predicated on a promise not performed." *McClure Properties, Inc.*, 724 F. Supp. 2d at 610 (citation

omitted). If the Court further considers Plaintiff's claim as one of fraudulent nondisclosure, in that

he was not given a copy of the report or a letter vindicating him, Plaintiff again has not identified

any legal duty the investigator or the Braskem Defendants had to give him that information apart

from the alleged promise not performed.[14] If, on the other hand, Plaintiff's claim is that the

investigator mislead him into believing that MDC would not be at the plant, his claim again fails.

In addition to using equivocal language that the investigator "implied" and "insinuated" that MDC

would not be allowed back at the plant, Plaintiff did not allege the investigator had an intent to

deceive, which is necessary for a claim of fraudulent concealment. In fact, Plaintiff alleges the

investigator "negligently handled [the] investigation" and negligently failed to tell others to keep

the investigation confidential. *Compl.* at ¶149. Plaintiff further alleges it was Defendant Blatt,

knowing the allegations of kickbacks were false, who directed MDC to come to the facility to

---

[14] The Court will assume, without deciding, for this analysis that the actions of the
investigator may be imputed to Defendant Braskem as the investigator was an employee of the
Company. The investigator has not been named as a defendant.

agitate Plaintiff as part of the conspiracy to get him terminated. *Id*. at ¶¶76, 85. Thus, for all these reasons, the Court finds the statements, actions, and inactions of the investigator are insufficient to sustain Plaintiff's claim of fraud.

The third event Plaintiff raises in support of his claim is that Defendant Blatt lied to him when he said he did not know the results of the investigation. Assuming Defendant Blatt attempted to conceal the truth and he knew Plaintiff was vindicated of wrongdoing in the kickback scheme, Plaintiff fails to identify how the concealment of the truth was material or how he relied upon the lie to his detriment after the statement was made. According to Plaintiff, the conversations that purportedly breached the Company's confidentiality policy and resulted in his termination occurred *before* Mr. Blatt made the lie. *Compl.* at ¶¶78-85. Thus, the lie was immaterial to Plaintiff's termination. Additionally, Plaintiff said he knew it was a lie at the time it was made because he knew the investigator had briefed Defendant Blatt on the results of the investigation six days earlier. *Id*. at ¶¶73, 84. Thus, the lie did not prevent Plaintiff from knowing (conceal) the truth because he knew it was untrue when Defendant Blatt said it. Therefore, the Court finds Plaintiff's claim of fraud cannot proceed on this final ground.

Having found Plaintiff cannot maintain his claim of fraud based on any of the events identified by Plaintiff, the Court **GRANTS** the Braskem Defendants' motion to dismiss Count III.[15]

---

[15]As with Count II, Count III is not dismissed in its entirety because Defendant MDC has not moved to dismiss.

**C.**
**Count V**
**Age Discrimination**

The Braskem Defendants' final argument is that Plaintiff has failed to properly allege a claim for age discrimination under the West Virginia Human Rights Act (WVHRA), West Virginia Code § 5–11–1 *et seq*. In order to establish a prima facie case of age discrimination, the WVHRA requires a plaintiff to demonstrate: "(1) That the plaintiff is a member of a protected class[;] (2) That the employer made an adverse decision concerning the plaintiff[;] [and that] (3) But for the plaintiff's protected status, the adverse decision would not have been made." Syl. Pt. 3, in part, *Conaway v. Eastern Ass'd Coal Corp*., 358 S.E.2d 423 (W. Va. 1986) (citation omitted). The Braskem Defendants do not dispute that, when Plaintiff was terminated, he was over 40 years old and a member of a protected class.[16] They also agree that his termination was an adverse decision. However, the Braskem Defendants argue Plaintiff has not alleged that his age was the "but for" reason for his termination. Instead, the Braskem Defendants assert Plaintiff repeatedly alleges he was terminated because of the disagreements he had with Defendant Blatt and certain Operating Engineers about safety at the plant.

With respect to the "but for" test, Plaintiff alleges in his Complaint that he was much older than the other project managers and was replaced by an individual who was under the age of 30. *Compl.* at ¶¶13, 14, 177. Plaintiff alleges Defendant Blatt resented his experience, knowledge, independence, and authority within the plant. *Id.* at ¶177. He also contends Defendant

---

[16]Plaintiff states he was 58 years old when he was terminated. *Compl.* at ¶170.

Blatt disliked the fact he could not control, manipulate, and intimidate him like he did with the younger engineers and managers. *Id*. Therefore, Defendant Blatt wanted rid of him. *Id*. at ¶126.

Upon consideration of these allegations under Rule 8 and Rule 12(b)(6), the Court finds Plaintiff has alleged a plausible claim of a disparate treatment in his Complaint. Although the Court agrees with the Braskem Defendants that the focus of Plaintiff's allegations is that he was terminated because he complained about inadequate safety measures, Rule 8 permits a plaintiff to assert alternative theories of recovery in a complaint. *See* Fed. R. Civ. P. 8(d);[17] *Rubberlite, Inc. v. Baychar Holdings, LLC*, 737 F. Supp. 2d 575, 584 (S.D. W. Va. 2010) (agreeing with the "[p]laintiffs that under Rule 8 of the Federal Rules of Civil Procedure they may plead alternative theories"). As Plaintiff in this case sufficiently has alleged an alternative theory of

---

[17]Rule 8(d) provides:

> **(d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.**
>
> > **(1) In General.** Each allegation must be simple, concise, and direct. No technical form is required.
> >
> > **(2) Alternative Statements of a Claim or Defense.** A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
> >
> > **(3) Inconsistent Claims or Defenses.** A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R. Civ. P. 8(d).

recovery of disparate treatment, the Court **DENIES** the Braskem Defendants' motion to dismiss this claim.

Plaintiff also alleges in paragraph 175 of the Complaint that the investigator failed to consider Plaintiff's protected status and that "Plaintiff was in a protected group of less than 80% of capital project managers, who were within the parameters for protection from age discrimination, . . . such that a disparate impact existed when Plaintiff was terminated, and such impact is evidence of age discrimination. *Compl.* at ¶175. However, to the extent Plaintiff is attempting to state a disparate impact claim, his effort fails. "Unlike disparate treatment analysis, which turns on illegal motive, disparate impact turns on discriminatory effect. To prevail under disparate impact, the plaintiff must show that the defendant's facially neutral policy has a disproportionate adverse impact on the basis of the protected trait." *West Virginia Univ. v. Decker*, 447 S.E.2d 259, 264 (W. Va. 1994) (citations omitted). Here, Plaintiff has not alleged there was any facially neutral policy that adversely impacted him. Therefore, Plaintiff has not sufficiently alleged a claim of disparate impact, and the Court **GRANTS** the Braskem Defendants' motion as to that claim.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** the Braskem Defendants' Motion to Dismiss Count II for Tortious Interference and Count III for Fraud. The Court **DENIES** the Braskem Defendants' motion as to Plaintiff's claim of disparate treatment, but it **GRANTS** the motion to the extent he seeks to state a claim of disparate impact. ECF No. 12. In addition, the Court finds the language Plaintiff argues is impertinent in the Braskem Defendants'

Memorandum of Law did not impact the Court's rulings on the Motion to Dismiss. Therefore, the

Court **DENIES AS MOOT** Plaintiff's Motion to Strike Impertinent Language. ECF No. 17.


   The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record

and any unrepresented parties.

      ENTER:  April 22, 2020

      ROBERT C. CHAMBERS
      UNITED STATES DISTRICT JUDGE