IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DUANE PORTER,

           Plaintiff,

v.                                        CIVIL ACTION NO.  3:19-0572

BRASKEM AMERICA, INC.,
JEFFREY BLATT, and
MI-DE-CON, INC.,

           Defendants.

**MEMORDANUM OPINION AND ORDER**

As this Court recently stated in its Memorandum Opinion and Order denying Plaintiff Duane Porter's Motion for default, there are four claims remaining in this action. *Porter v. Braskem Am. Inc.*, 3:19-cv-0572, 2021 WL 329211, at *1 (S.D. W. Va. Feb. 1, 2021). Pending against Defendants Braskem America, Inc. and Jeffrey Blatt (collectively referred to as the Braskem Defendants) and Defendant Mi-De-Con, Inc. (MDC) are Counts I and IV for Civil Conspiracy and Defamation. Pending only against Defendant MDC are Counts II and III for Tortious Interference and Fraud and Fraudulent Inducement. Defendants now move for summary judgment on all remaining claims. ECF Nos. 122, 124. In his Response to MDC's motion, Plaintiff states that he "will not argue that his fraud claim against MDC is still active." *Pl.'s Resp. to MDC's Mot. for Summ. J. as to the Defamation Claim*, at 2 n.1, ECF No. 129. Given Plaintiff's position, the Court **GRANTS** summary judgment in favor of MDC on Count III for Fraud and Fraudulent Inducement. On February 8, 2021, this Court held a Pretrial Conference in which it heard arguments on the remaining counts and permitted the parties to submit additional briefing. With

briefing now complete and upon consideration of the parties' arguments, the Court **GRANTS** summary judgment in favor of Defendants on the remaining claims.

# I.
# STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

# II.
# DEFAMATION

The Court first addresses Defendants' argument that Count IV for Defamation must be dismissed because it was filed outside the statute of limitations. The parties do not dispute that

West Virginia Code § 55-2-12(c) establishes a one-year statute of limitations for bringing a defamation action. Additionally, it is well established under West Virginia law that the statute of limitations for a defamation action "begins to run when the fact of the defamation becomes known, or reasonably should have become known, to the plaintiff." Syl., *Padon v. Sears, Roebuck & Co.*, 411 S.E.2d 245 (W. Va. 1991). At the time the events occurred giving rise to this action, Plaintiff worked as a Capital Projects Leader and was an at-will employee of Defendant Braskem. Plaintiff's employment was terminated on August 8, 2018, and he subsequently filed this lawsuit on August 5, 2019. Although Plaintiff brought this action within one year of his termination, Defendants contend that the undisputed evidence shows Plaintiff knew of the alleged defamatory statements in June 2018. Thus, Defendants maintain the defamation claim is time-barred.

The essence of Plaintiff's defamation claim is that Defendants conspired together to make false claims that Plaintiff was taking bribes and kickbacks from one of MDC's competitors in exchange for awarding contracts to that competitor at Defendant Braskem's plant in Wayne County, West Virginia. *See Compl.* at ¶¶154-168. The statements spurring the defamation claim arose from a conversation on June 27, 2018, between Dan West of MDC and James Geyer of Braskem. During his deposition, Mr. Geyer recalled:

> The only thing that was said to me by Dan West as far as verbiage goes that I can recall was financial—it was financial. That's all he said. It wasn't that [Plaintiff] was kin. It wasn't that somebody that was kin to [Plaintiff] was related or somebody. It was financial. That's what–the word I remember, "financial."

*Dep. of James Geyer*, at 28 (June 24, 2020), ECF No. 124-2.[1] Contrary to Mr. Geyer's recollection

---

[1] According to Mr. Geyer, two other employees of MDC also were present. One was MDC's Vice President, Matt Floyd. *Id*. at 27.

of the conversation, Mr. West denies making any allegations that Mr. Porter had acted improperly in awarding contracts to MDC's competitor. *Dep. of Dan West*, at 24, ECF No. 122-1. Instead, he insisted that he merely was commenting on the financial cost MDC incurs when it unsuccessfully bids on a project. *Id*. at 23, 24. Plaintiff submits that, if Mr. West did not allege he was taking bribes and kickbacks, then Mr. Geyer defamed him by fabricating such accusations. In either scenario, it is clear Plaintiff's defamation claim emerged from this conversation. Although both parties deny they made any statements that constitute defamation under West Virginia law,[2] the Court finds it unnecessary to resolve whether defamatory statements actually were made because the evidence clearly establishes that the statute of limitations bars any potential defamation claim.[3]

At deposition, Plaintiff stated that his supervisor, Anthony Skeese, called him to discuss the accusations on June 29, 2018, just two days after the conversation between Messrs. Geyer and West occurred. Plaintiff related:

> He said he needed to talk to me after, you know, the chit chat and said that, hey, he had had a conversation with, James Geyer had called him and said that during the walk through that Matt Floyd and Dan West had accused me of taking monetary favors in exchange for having J & J doing work on the capital projects.
>
> And then followed up and he says, I also had –and I thought he said Matt Floyd—but the documents that you presented said it was Dan West, his write-up said it was Dan West—but one of them two had called him making the very same accusations, that I was taking monetary favors from J & J in order to give them work.

---

[2]To prove defamation under West Virginia, a private individual must demonstrate: "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc*., 320 S.E.2d 70 (W. Va. 1983).

[3]The Braskem Defendants contend any statements that may be attributed to them are not cognizable as defamation because they are subject to qualified privilege.

*Dep. of Pl.*, at 218 (June 23, 2020), ECF No. 122-3. Following this conversation, Plaintiff expressly told Mr. Geyer on July 9, 2018, that he was considering filing a lawsuit for defamation against MDC.[4] An investigation into the allegations was conducted by Braskem and, on July 20, 2018, Plaintiff was informed he was cleared on any wrongdoing. During his deposition, Plaintiff said he was unaware of any statements being made accusing him of taking bribes or kickbacks after July 20. *Id*. at 336.[5] Given that Plaintiff admits knowledge of the defamatory statements as of June 29, denies knowledge of any defamatory statements being made after July 20, and threatened to file a lawsuit for defamation on July 9, the Braskem Defendants and MDC argue his defamation claim is barred by the one-year statute of limitations because he did not file his Complaint until August 5, 2019.

---

[4]At his deposition, Plaintiff stated:

> Q. Did you specifically say I might sue Mi-De-Con?
>
> A. There could be—this could end up being a lawsuit against Mi-De-Con because they're defaming me.
>
> Q. That's what you said?
>
> A. Yes.
>
> Q. Those were your words?
>
> A. Yes.

*Id*. at 232-33.

[5]During his deposition, Plaintiff was asked: "But as far as any statement about you taking bribes, taking kickbacks, taking monetary favors, you're not aware of any of those after this July 20th, conversation . . . ? A. That's correct." *Id*. Plaintiff also said he was not aware of any Braskem employees making statements to anyone outside of Braskem about the MDC allegations after July 26. *Dep. of Pl.*, at 323, ECF No. 124-1.

In Response, Plaintiff does not dispute that he learned of the alleged defamatory statements on June 29. Likewise, Plaintiff does not contest that an internal investigation was conducted into the accusations, and he was notified that he was cleared on any wrongdoing on July 20. Nevertheless, Plaintiff alleges that the accusations were part of a series of events that occurred both before and after the statements were made as part of a conspiracy to get him fired and for MDC to gain contracts with Defendant Braskem.

Despite being exonerated after the first investigation, Plaintiff argues in his initial briefing that the statute of limitations did not begin to run until he was fired on August 8 because it was the day he first knew or could have known he suffered damage from the defamatory statements.[6] Plaintiff's own testimony, however, refutes his argument. It is uncontested that Plaintiff knew by June 29 that he was accused of bribery and taking kickbacks. Assuming for the sake of Plaintiff's argument that those accusations constitute defamation, Plaintiff knew or should have known at that point in time that he suffered an injury—at the very least—to his reputation. In fact, Plaintiff stated so much during his deposition. When Mr. Skeese called Plaintiff on June 29 to discuss the allegations, Plaintiff said that he told Mr. Skeese the allegations were false but he understood the seriousness of the accusations because they affected his reputation, his job, and his future with Braskem. *Dep. of Pl.*, at 48-49 (Sept. 14, 2020), ECF No. 122-4. In fact, ten days later, on July 9, 2018, Plaintiff said he told Mr. Geyer that MDC had defamed him and he was considering filing a lawsuit. *Dep. of Pl.*, at 232-33, ECF No. 122-3. Additionally, Plaintiff said he could not identify any defamatory statements made after July 20. *Dep. of Pl.* at 336, ECF No. 122-

---

[6]Plaintiff states he was damaged again on September 18, 2018, when he was denied a portion of his unemployment benefits.

3. In his Supplemental Memorandum filed after the Pretrial Conference, Plaintiff further states that the harm he suffered "was as much about being charged or investigated and the subject of gossip around the plant arising from the compliance investigation, as it was about ultimately losing his job." *Pl.'s Supp. Mem. of Law Relating to Pre-Trial Conf. Issues*, at 5, n.1, ECF No. 152. Thus, it is undeniable that Plaintiff knew of the alleged defamatory statements and that Plaintiff believed the statements had caused him injuries long before he was terminated. Moreover, Plaintiff acknowledged he was exonerated of the accusations and, in fact, he was terminated following a different investigation for breaching confidentiality and creating a hostile work environment. Plaintiff's argument it was part of a grand scheme and conspiracy to have him fired is irrelevant as to when the statute of limitations began to run on his defamation claim, which unmistakably occurred more than one year before he filed his lawsuit on August 5, 2019.[7]

Despite this conclusive evidence that Plaintiff's defamation claim was filed outside the statute of limitations, Plaintiff further argues in his Supplemental Memorandum that the Braskem Defendants waived the defense because their Answer was not timely filed. The Court disagrees. As this Court fully explained in denying Plaintiff's Motion for Judgment by Default on Counts I and IV, the Braskem Defendants' late Answer was an inadvertent, good-faith mistake.

---

[7]Additionally, setting aside the fact the defamation claim was filed beyond the statute of limitations for the above reasons, even if the Court were to accept Plaintiff's theory that the purported defamatory statements laid the groundwork for his termination, he was suspended on July 26. Plaintiff stated in his deposition that MDC "damaged my reputation. It really disturbed and ruined things, the flow of my family. Everyone was stressed out." *Dep. of Pl.*, at 191 (June 23, 2020), ECF No. 124-1. When asked how his family knew about the allegations, he replied that he "was fired" and "sent home" on July 26, "What am I supposed to tell my family?" *Id*. Given Plaintiff's statements, it is apparent to the Court that Plaintiff's suspension was yet another point in time when he believed he was injured by the accusations, which occurred more than one year before he filed this action.

MDC had timely raised the statute of limitations defense in its Answer, and the Braskem Defendants argued the defense several times prior to their Answer being filed. Therefore, the statute of limitations defense should have come as no surprise to Plaintiff and he did not experience any unfair prejudice. Therefore, the Court **FINDS** the statute of limitations bars Plaintiff's defamation claim as to all Defendants and **GRANTS** their Motions for Summary Judgment on the claim.

## III.
## TORTIOUS INTERFERENCE

Turning next to Plaintiff's argument that MDC tortiously interfered with his employment relationship in Count II, West Virginia law provides Plaintiff must show: "(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 2, *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 314 S.E.2d 166 (W. Va. 1983). Here, Plaintiff was an at-will employee of Braskem, and he alleges MDC interfered with that relationship when Mr. West accused him of taking bribes and kickbacks. Although MDC denies making the statements, if the Court assumes for purposes of summary judgment that the statements were made, Plaintiff's claim for intentional interference of his employment relationship with Braskem still fails.

In particular, Plaintiff asserts that he was led to believe MDC would not be permitted back at the Braskem facility if the allegations made against him were proven to be false following the internal investigation.[8] Plaintiff alleges that, after the investigation ended and he

---

[8] Plaintiff claims he can prove there was no legitimate reason for MDC to be at the facility. The Braskem Defendants maintain MDC was not prohibited from the facility.

was told he was exonerated of any wrongdoing, Defendant Blatt nevertheless orchestrated having MDC at the plant knowing MDC's presence would enrage him and create grounds upon which he could be fired.[9] Indeed, upon learning MDC was at the plant on July 26, Plaintiff became upset and went on an angry tirade[10] that was witnessed by numerous others.[11] Although previously being told he could not discuss the bribery investigation because it was confidential,[12] Plaintiff violated confidentiality by disclosing the investigation to others during his outburst. Ultimately, Plaintiff was told to go home and cool down. Thereafter, he was suspended, and a new investigation was launched into his July 26 behavior. Following this second investigation, Plaintiff was terminated on August 8, 2018, for violating confidentiality and creating a hostile work environment.

In support of its argument that Plaintiff cannot proceed on his tortious interference claim, MDC points out there is no evidence Plaintiff was subject to any disciplinary action as a result of the first investigation into the conversation between Messrs. West and Geyer, and Plaintiff

---

[9] The Braskem Defendants deny this allegation and insist that MDC was at the plant to perform work.

[10] For instance, Plaintiff admitted telling Defendant Blatt that "I . . . felt like I ought to go out–that I ought to go out and beat the shit out of Dan West." *Dep. of Pl.* at 307 (June 23, 2020), ECF No. 122-3. Mr. Geyer also said during his deposition that Plaintiff stood in his office doorway, pointed his finger at him in a "threatening manner," and twice said "Joe Henry, said, you're a damn liar[.]" *Dep. of James Geyer*, at 54, ECF No. 124-2. Plaintiff admitted to being "really angry." *Dep. of Pl.*, at 279 (June 24, 2020), ECF No. 154.

[11] The Braskem Defendants attached several "Witness Statements" describing Plaintiff's behavior to its Motion for Summary Judgment. ECF No. 124-5.

[12] The Braskem Defendants also state Plaintiff was told he could not engage in any retaliatory behavior.

had continued to work for Braskem from July 20, when that investigation ended, until July 26, when he was suspended for other reasons and the second investigation started. MDC also insists there is no evidence it had any role in the second investigation. Instead, MDC's only involvement was that it sent employees to the plant on July 26 at the request of Braskem. As Braskem ultimately terminated Plaintiff for losing his temper and disclosing confidential information, MDC argues it cannot be liable for tortious interference. Upon review, the Court agrees.

Assuming Mr. West accused Plaintiff of taking bribes and kickbacks on June 26, it is undisputed that the first investigation exonerated Plaintiff, and Braskem took no disciplinary action against him. In fact, after Plaintiff was notified of the finding on July 20, he continued to work for Braskem until July 26. There simply is no evidence MDC knew when Braskem asked it to send employees to work at the plant on July 26 that Plaintiff would breach confidentiality and have such a visceral reaction to MDC's presence that he would be suspended and then terminated from his employment. Thus, even if the Court assumes for summary judgment purposes that Mr. West made intentional, fictitious comments about Plaintiff to Braskem in June, those comments were not the reason Plaintiff was fired on August 8. Instead, Plaintiff's termination was due to his own belligerent behavior on July 26 and not because he was accused or found to have taken bribes or kickbacks. Therefore, the Court **GRANTS** MDC's motion for summary judgment on Count II for Intentional Interference.

## IV.
## CONSPIRACY

Plaintiff's last claim is that Defendants engaged in a civil conspiracy that caused him damage. Under West Virginia law, "[a] civil conspiracy is not a *per se*, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who

did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Syl. Pt. 9, *Dunn v. Rockwell*, 689 S.E.2d 255, 259 (W. Va. 2009). As Plaintiff has no other surviving causes of action, his civil conspiracy claim necessarily fails because there are no viable underlying claims. *See Sheehan v. Saoud*, 650 Fed. App'x. 143, 153 (4th Cir. 2016) (recognizing that "courts in West Virginia dismiss civil conspiracy claims when they are not supported by an underlying tort" (citation omitted)). Therefore, the Court **GRANTS** summary judgment in favor of Defendants on Count I for Civil Conspiracy.

## V.
## CONCLUSION

Accordingly, as the Court has resolved all claims in favor of Defendants, the Court **GRANTS** Defendants' Motions for Summary Judgment and **DIRECTS** the Clerk to dismiss this action from the docket of the Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: February 19, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE